SANTE BORSOI *v.* RAYMOND SPARICO ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued May 6—decided June 16, 1954

*Charles A. Watrous,* with whom, on the brief, was *Richard H. Spencer,* for the appellants (defendants).

*Charles G. Albom,* with whom was *Frederick R. Houde,* for the appellee (plaintiff).

DALY, J. The plaintiff sued the defendants to recover damages for personal injuries alleged to have been sustained by him as a result of the negligence of the defendant Alfred Giordano, agent of the defendant Raymond Sparico. The defendants offered no evidence and moved for a directed verdict on the ground of the claimed insufficiency of the plaintiff's evidence. The motion was denied, and the jury rendered a verdict for the plaintiff. The defendants moved the court for judgment notwithstanding the verdict upon the grounds that the verdict was contrary to the law, contrary to the evidence and could only be based on surmise and conjecture; alternatively, they moved that the court set aside the verdict upon the same grounds. The motion was denied, and from a judgment for the plaintiff the defendants have appealed, assigning as error the denial of the motion to set the verdict aside, the denial of the motion for judgment notwithstanding the

368

verdict, and instructions given to the jury in the charge.

The plaintiff was the only witness on the question of liability. The jury might reasonably have found the following facts: The plaintiff owned a tract of land in Branford and made an agreement with the defendant Sparico whereby Sparico was to level off the land by moving earth from one portion to another. Sparico's employees, the defendant Giordano and Cyril Ulnar, assisted him. A steam shovel, a bulldozer and two trucks were used. On June 8, 1951, the plaintiff was watching the defendant and his employees when Ulnar accidentally backed one of the trucks into a hole. Ulnar, Giordano and the plaintiff discussed the situation and decided to get a chain and pull the truck out. The plaintiff and Giordano went underneath it and attached a chain to the front axle. In the end, the truck was pushed onto firm ground with a bulldozer by Ulnar, and Giordano dumped its load. Then the plaintiff said to Ulnar, in Giordano's presence, "[W]e have to take the chain out." Ulnar went to the bulldozer, and the plaintiff crawled under the truck to remove the chain. While he was under the truck, Giordano suddenly and without warning leaped into the truck and drove it forward, dragging the plaintiff along the ground and injuring him. There were no obstacles to interfere with vision of the various persons. When the plaintiff crawled under the truck, its cab was not occupied. As Giordano drove forward Ulnar called to him to desist, but it was too late. The plaintiff, while in his position of danger, saw and heard this. On June 14, 1951, the plaintiff executed for the defendants a signed statement of what had happened. It was not offered in evidence.

The defendants base their contention that the court erred in denying their motion for judgment notwithstanding the verdict or to set the verdict aside upon their claim that the plaintiff did not establish negligence upon the part of Giordano. They say that there was no evidence upon which the jury could have found that he knew or should have known that the plaintiff was or might be under the truck when it was started. In support of this claim, they contend that the plaintiff's evidence did not indicate that Giordano had heard or should have heard the plaintiff say to Ulnar, "[W]e have to take the chain out." The answer to this is the plaintiff's testimony that his statement to Ulnar was made in the presence of Giordano and that the chain was still attached to the front axle of the truck when Giordano suddenly jumped into the cab, started the truck and drove it forward, knowing that the plaintiff had been present shortly before that. In addition, Giordano knew that the plaintiff had helped him attach the chain to the truck by crawling under it, and he also knew or should have known, as he started the truck, that the plaintiff was not at the place where he had been. Due care is always predicated on the existing circumstances. The peculiarity of the circumstances surrounding an accident may furnish support for a defendant's verdict, but the trier of the fact is, in this state, given a wide latitude in drawing the inference of negligence. *Rosa* v. *American Oil Co.*, 129 Conn. 585, 588, 30 A.2d 385. "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. *Botticelli* v. *Winters*, 125 Conn. 537, 542, 7 Atl. (2d) 443. By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm

or that the particular injury which resulted was foreseeable, but the test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 237, 21 A.2d 402. "Broadly considered, it might be said that the duty to exercise a reasonable care arises whenever the activities of two persons come so in conjunction that the failure to exercise that care by one is liable to cause injury to the other." *Swentusky* v. *Prudential Ins. Co.,* 116 Conn. 526, 533, 165 A. 686. The court did not err in denying the defendants' motion.

The defendants claim that the court erred in instructing the jury on the rule of law applicable to the plaintiff's burden of proof. They contend that, since they offered no evidence, the trial court, in the charge, misled the jury by referring to weighing and balancing the evidence and by using such phrases as "evidence on the other side" and "fair preponderance of the evidence." The meaning of the verb "weigh" is not restricted to "examine by the balance." It also means "to ponder in the mind; to consider or examine for the purpose of forming an opinion or coming to a conclusion; . . . [t]o consider as worthy of notice; to regard; esteem." Webster's New International Dictionary (2d Ed.). In other parts of its charge, the court accurately stated the law concerning the burden of proof. Any one of the statements complained of was, at most, only inadvertently inaccurate and harmless.

"An inadvertently inaccurate statement extracted from a charge by a process of critical dissection will not be regarded as reversible error unless it is reasonably probable that the jury would have been misled by it." *McMahon* v. *Bryant Electric Co.,*

121 Conn. 397, 406, 185 A. 181; *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611; *Ghent* v. *Stevens,* 114 Conn. 415, 419, 159 A. 94; Maltbie, Conn. App. Proc., § 49. Obviously inadvertent statements in a charge are rarely a cause for reversal. *Goodsell* v. *Brighenti,* 128 Conn. 581, 585, 24 A.2d 834. "The charge ought not to contain contradictory statements of the law or statements which might be so construed; neither ought the charge to be required to be, or expected to be, as accurate in its instructions upon legal propositions as the opinions of a court of last resort. A charge is often required to be delivered upon meager opportunity for preparation and under the strain of an intense legal battle. We examine the charge to see if it fairly presents the case to the jury, in such way that injustice was not done under the rules of law to the legal rights of either litigant, and not with legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements. If such there be, we test them by the rule stated." *Pratt, Read & Co.* v. *New York, N.H. & H.R. Co.,* 102 Conn. 735, 740, 130 A. 102. The attacked sentences of the charge, fairly construed, could not have misled the jury. It must have been plain to them that what the court meant was that they were to weigh all of the evidence in the case rather than to weigh the evidence which came from the mouth of the plaintiff as against the complete absence of testimony from the defendants personally. The instructions could not have had an effect prejudicial to the defendants in view of the repeated statements concerning the burden of proof which were accurate.

The defendants claim that the court erred in failing to give the jury any instructions suited to this case, in which the plaintiff was the only witness on

the issue of liability. The defendants filed no request to charge. Where a charge fairly presents the issues in a case, as it did here, error will not be found in a failure to give specific instructions upon some special feature in the absence of a request to do so. *Rogoff* v. *Southern New England Contractors Supply Co.,* 129 Conn. 687, 692, 31 A.2d 29; *Riley* v. *Connecticut Co.,* 129 Conn. 554, 559, 29 A.2d 759; *Coy* v. *Milford,* 126 Conn. 484, 488, 12 A.2d 641; Maltbie, Conn. App. Proc., § 65.

There is no error.

In this opinion the other judges concurred.