PERCIVAL R. LOWE *v.* JEROME H. KOHN ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued March 7—decided May 8, 1941.

*James W. Carpenter,* for the appellant (plaintiff).

*Howard W. Alcorn,* with whom were *Henry P. Bakewell,* and, on the brief, *Hugh M. Alcorn,* for the appellees (defendants Maurice Hartman et als.).

*Bruce Caldwell,* for the appellees (defendants Jerome H. Kohn et al.).

AVERY, J. The plaintiff brought this action to recover damages for a loss which he claimed to have suffered in connection with the purchase and sale of stock in the Hartman Tobacco Company. The defendants were officers and directors of the company. The plaintiff claims that on September 30, 1929, he purchased

five hundred shares of stock in the company upon the representation of two of the defendants, Jerome H. and Solomon J. Kohn, that if he made such a purchase the company would see to it that he suffered no loss by the acquisition of the stock, and that on October 10, 1930, he sold it at a loss of $11,400 below the purchase price. This suit was brought to recover the amount of the loss less certain payments admitted to have been made to him. The case was tried to the court and judgment rendered for the defendant, from which the plaintiff has appealed.

The essential facts appearing in the finding of the trial court are these: The Hartman Tobacco Company is a Connecticut corporation with its principal place of business in Hartford and is engaged in the business of raising, buying and selling leaf tobacco. On September 30, 1929, it had shares of stock outstanding which were traded on the stock markets in Hartford and New York. The defendants were stockholders, directors and officers of the corporation, Jerome H. Kohn being vice-president and Solomon J. Kohn secretary. The plaintiff for many years had been a tobacco broker, living in New York City, and had large dealings in tobacco with the defendants acting for the company and had been on friendly terms with them. On that day he had a conference with Jerome H. and Solomon J. Kohn, in the office of the company in Hartford. Jerome suggested that the plaintiff buy one thousand shares of the stock of the company, assuring him that it was an excellent proposition, that he would make substantial profits upon it, and that the company would guarantee him against loss. The plaintiff was familiar with the tobacco trade throughout the country, came frequently to Hartford, and was very familiar with the affairs of the Hartman Tobacco Company and knew it was in an excellent position to make substantial profits. With-

out making any investigation of the company's legal power to indemnify him against loss, the plaintiff decided to buy five hundred shares of stock in the company, which were bought for him on September 30, 1929, in the open market through brokers in Hartford for $12,000. The stock was delivered to the plaintiff's brokers in New York and carried by them upon the plaintiff's margin account until subsequently sold. The entire transaction was a margin transaction and the plaintiff at no time paid any cash for the stock.

Shortly after the conversation with the plaintiff, Jerome H. Kohn reported to the defendants, Albert Newfield and Maurice Hartman, what had taken place between the plaintiff and himself. Subsequently, the stock rose in value. Later, however, it declined, and, on October 14, 1930, it was sold for $600 at forced sale by the plaintiff's brokers because of his inability to meet margin calls upon it and other stocks deposited by him as collateral for his loans. Neither the Hartman Tobacco Company nor any of the defendants were notified of any intention to sell the stock, no offer was made to them to sell it to them, they were given no opportunity to buy it, and were not informed that the stock had been sold. From October 14, 1930, to February 14, 1931, the plaintiff had frequent talks with Jerome H. Kohn and asked for a repayment of his loss, and Kohn stated that the company would pay the loss at some future time but because of a shortage of money, it could not be presently paid. At some time prior to January 12, 1931, the plaintiff and Kohn worked out a plan whereby the company was to make payments to the plaintiff by adding certain amounts to items billed to it. Pursuant to this plan, a payment of $2000 was made on January 11, 1932, and a further payment of $1000 on March 7, 1932. About the last of February, in 1932, Jerome H. and Solomon J. Kohn

ceased to be officers of the company, and in the year 1933 ceased to be directors and Maurice Hartman became president and Albert Newfield, treasurer. From March, 1932, through April, 1937, the Kohns had no further dealings with the plaintiff and all claims and requests for repayment by him were addressed to the defendants Maurice Hartman and Albert Newfield. They did not pay anything on the claim, giving various reasons such as shortage of money and the pendency of a suit by Leo Taussig, involving facts similar to those of the present suit. The nature of the Taussig claim was known by the plaintiff. In January, 1934, a demurrer of the Hartman Tobacco Company in the Taussig case was sustained upon the ground that an agreement to indemnify a purchaser of the company's stock against loss arising from its purchase was ultra vires; and later in April of that year judgment was entered in the suit in favor of the Hartman Tobacco Company. Since that decision, the company has made no payments to the plaintiff. In 1936, the plaintiff threatened to institute a suit but was induced to refrain from doing so by assurances of Newfield and the Hartmans that payment would eventually be made.

The original complaint in this case contained two counts: The first count was based upon the theory that the representations made to the plaintiff by which he was induced to purchase the stock were fraudulent. That complaint contained a second count based more or less on the theory of an implied warranty by the defendants that the corporation had power to make such an agreement. This count went out on demurrer, and in this appeal error is not assigned by the appellant as to the ruling of the trial court sustaining the demurrer. The case was tried on the theory of fraudulent representations. The trial was concluded March 20, 1940, and on April 10, 1940, but before the case had

been decided by the trial court, the plaintiff moved
for permission to file a substitute second count based
upon the theory of an implied warranty by the defend-
ants that the corporation had power to make such a
contract of guaranty. The trial court refused permis-
sion to the plaintiff to file the substitute second count
and gave judgment for the defendants. The plaintiff
has moved to rectify his appeal in order to show his
reasons for desiring to file the substitute second count
and for leave to amend his reasons of appeal.

It is agreed by both parties that the agreement of
indemnity claimed by the plaintiff if made by the cor-
poration would be ultra vires and not binding upon it.
Further, the trial court concluded as a matter of fact
that there was no fraudulent or false representation of
an existing condition of fact by Jerome H. Kohn and
no representation of a present existing fact or intention
by the other defendants or any statement made reck-
lessly or without regard to its truth by any of the de-
fendants. Representations to be actionable as fraud-
ulent must be statements of fact which are known to
be untrue or made without belief in their truth or
recklessly; they must be made for the purpose of in-
ducing the other party to act on them; and he must
in fact have been induced to act upon them to his
injury. *Scholfield Gear & Pulley Co.* v. *Scholfield,* 71
Conn. 1, 18, 40 Atl. 1046; *O'Neill* v. *Conway,* 88 Conn.
651, 653, 92 Atl. 425; *Nanos* v. *Harrison,* 97 Conn. 529,
532, 117 Atl. 803; *Helming* v. *Kashak,* 122 Conn. 641,
642, 191 Atl. 525. The assurance given the plaintiff
that the purchase of the stock was an excellent prop-
osition and that he would make substantial profits
from it, even if it could be regarded as a representation
of fact, affords no support for a judgment for him be-
cause the court has not found, nor are we requested to

correct it to state, that he relied on the statement and was induced thereby to make the purchase.

The further assurance which the trial court found to be an inducing cause of the sale, that the company would guarantee the plaintiff against loss, was not a representation of fact but a promise as to future action, not by Kohn but by the corporation. It has been held that such an assurance, wholly promissory in its nature, cannot be the basis of an action for fraud. *Knowlton* v. *Keenan*, 146 Mass. 86, 88, 15 N. E. 127. In any event it could not be held fraudulent unless Kohn, when he made it, knew or had reason to believe that the corporation would not assume the obligation or gave the assurance recklessly or without belief that it would do so. *Taylor* v. *Commercial Bank*, 174 N. Y. 181, 184, 66 N. E. 726; *Bigelow* v. *Barnes*, 121 Minn. 148, 150, 140 N. W. 1032; 23 Am. Jur., Fraud and Deceit, § 35; and see *Moran* v. *Holmes Mfg. Co.*, 99 Conn. 180, 186, 121 Atl. 346; *Sallies* v. *Johnson*, 85 Conn. 77, 80, 81 Atl. 974; *Nanos* v. *Harrison*, supra; *Hubbard* v. *Schlump*, 106 Conn. 216, 219, 137 Atl. 644. The finding is silent as to any such elements in the situation. So far as appears, Kohn may have honestly believed that the corporation would guarantee the plaintiff against loss, and if he did so believe, the fact that such a guaranty was ultra vires would not taint the assurance with fraud; if he believed that the corporation had the power to give the guaranty, the assurance would not be fraudulent merely because as matter of law it did not have that power. *Dwyer* v. *Redmond*, 103 Conn. 237, 242, 130 Atl. 108. The assurance is not susceptible of a construction that Kohn, in making it, purported to act as agent of the corporation or to have authority to bind it, and the cases of *Chieppo* v. *Chieppo*, 88 Conn. 233, 90 Atl. 940, and *Sullivan* v. *Mancini*, 103 Conn. 110, 113, 130 Atl. 79, relied on by

the plaintiff, are not in point. As the assurances given by Kohn were an insufficient basis to sustain an action of fraud, there is no occasion to consider the correctness of the other conclusions reached by the trial court.

The claim which the plaintiff sought to make under the substitute second count of the complaint is based upon the theory of implied warranty. *E. & F. Construction Co.* v. *Stamford*, 114 Conn. 250, 258, 158 Atl. 551. The substance of this claim is that in making the statement to the plaintiff which he did, Jerome Kohn impliedly warranted that he was the agent of the company and as such authorized to make the statement that the company would guarantee the plaintiff against loss in the transaction, and that the other individual defendants by their conduct and subsequent dealings with the plaintiff participated to such a degree as to make them parties to the original implied agreement. This claim is without support in the facts found. It is not found that Kohn purported to act as agent of the corporation or to have authority to bind it. Consequently, there is no basis for an implied warranty that he had such authority. The assurance given by Kohn to the plaintiff to have the effect of a warranty must have been as an incident to a contract between them or as an independent agreement on the part of Kohn that the plaintiff would not suffer a loss, but the court has found that there was no contract between Kohn and the plaintiff or between the corporation and the plaintiff. Consequently, there was nothing to which the claimed warranty could attach. *Howe* v. *Raymond*, 74 Conn. 68, 70, 49 Atl. 854. In *E. & F. Construction Co.* v. *Stamford*, supra, there was a contract to which the implied warranty could attach as an incident. It is not claimed that the statement of Kohn constituted an independent agreement. As the facts found afford no basis for a recovery by the plain-

tiff upon the ground of an implied warranty, the filing of the amendment would have been wholly ineffectual and it is not necessary to consider the soundness of the grounds given by the trial court for refusing permission to file it.

There is no error.

In this opinion the other judges concurred.